Thank you, Your Honor. Michael Rubin for Petitioner Stephen Shoemaker. Nice tie, Mr. Rubin. Thank you, Your Honor. Nice tie to you. Mr. Shoemaker was convicted of private possession and private duplication of eight images that the jury found were child pornography based on legal rulings that violated the First Amendment and that require reversal under AEDPA because they are contrary to clearly established federal law as set forth in the Supreme Court's Ferber, Osborne, and Ashcroft cases. Six of those images are innocuous on their face. As the prosecutor acknowledged in the excerpts that we quoted at page 311 to 314, some of them were taken from naturalist magazines. Some of them were photos of children that were naked or near naked but don't satisfy the First Amendment's requirements as articulated by the Supreme Court for actionable child pornography. And the only reason that Mr. Shoemaker was convicted of privately possessing those images was because the trial court allowed the prosecutor to argue that an image that is otherwise not child pornography when taken becomes child pornography when held, when possessed, in a context with, here the prosecutor had 20 What was the context that the prosecutor relied on? The context was as to all except exhibit 13 and 14, that they were posted by someone else, on a website that Mr. Shoemaker did not control and that Mr. Shoemaker was not prosecuted for having anything to do with because they were found on this other website, this Beach Baby website that the systems operator, when those 23 images of adult pornography, non-obscene adult pornography, pornography that was not the subject of any conviction, when these six innocuous photos plus the two more photos were shown to the jury in connection with them, the prosecutor argued over and over and over again, you can take an innocent photo of a child, that is not child pornography when taken, and when shown in this context, that context shows the preferences and predilections of the defendant which the Supreme Court has said is impermissible. So the argument, which case, which is the case that you, do you really have fervor for that proposition that the prosecutor could not make that argument? Fervor and Ashcroft. Fervor because it states that the justification for carving out from the First Amendment an exception for child pornography are because those are images that involve sexual abuse of the child at the time they're taken. So that states the principle, but then Ashcroft takes it one step further, because Ashcroft involved the challenge to the CPPA, the Child Pornography Prevention Act, where Congress tried to create three new categories of unlawful conduct, different types of child pornography that were not criminal at the time. One of them, subsection D, was how an image that is not otherwise child pornography is presented or depicted. And what the Court said is, as Ferber held, this is page 257, whether it's child pornography cannot turn on how the speech is presented rather than what it's depicted. And then it gave an example on page 258 where it had a film, the Court described a film that had explicit adult conduct that was presented in packaging that suggested that the contents were child pornography. And the Supreme Court said on page 258 that just because it's placed in a box suggesting a prohibited movie, in other words, just because of the context in which it's presented, does not make it child pornography. So is your argument focused on what the prosecutor argued, or is it the jury instruction that the municipal court, or that the court gave? That's right. It's actually a combination of things. It is certainly the prosecutorial argument. The trial of the prosecutorial misconduct? No. I'm alleging that the trial judge in the trial judge's ruling that said, page 293, you can take an innocuous photo and make it illegal. It's all in the use of the photo. It was the trial court's ruling that violated the First Amendment. So the trial court's ruling essentially preceded. That's correct. The trial court invited the prosecutor to make those arguments. The jury instruction. That's correct. Right? Was the jury instruction okay? The jury instruction was not okay as it was presented in the context of this case, Your Honor. Was it objected to? Yes. The defendant argued throughout, although he was focusing more on the morphing issues than on the context issue at this time. Okay. I understand. There was no sexual abuse at the time, and the defendant, yes, indeed, did present his proposed jury instructions. The trial court rejected. Now, under the First Amendment. So what was the – I understand your sufficiency of the evidence argument. You're arguing that these six photos can't be interpreted as pornography. My question is a different one. Is that the argument? You're making sufficiency of the evidence, or are you arguing that the jury was improperly instructed? No. I'm arguing first that on their face, and this court has to exercise its independent judgment when First Amendment speech is challenged, first, on their face, these images are not child pornography, regardless of the instructions, regardless of the prosecutorial argument. Before you go on. Go ahead. I just want to ask you. Sure. You said we exercise our independent judgment. That's correct. Even in the context of AADPA? Yes. As McCoy versus Stewart – as this Court said in McCoy versus Stewart, as the Supreme Court said in Bose, which wasn't an EPPA case. The Supreme Court hasn't answered this question yet, though. No. No. We briefly – How you read – No. The way to do it, though, consistent with the Supreme Court case law, is you have to apply EPPA. You have to, as the gateway matter, conclude that there has been an objectively unreasonable application of clearly state – clearly established federal law as established in Supreme Court case law. That is the standard. But in determining whether speech is criminalizable – can be criminalized because it deprives someone of First Amendment rights, then under Ferber and Bose, which cited Ferber, and the – and this Court's decision in McCoy versus Stewart, you actually have to conduct your own independent review, as you would in every First Amendment case, to determine whether the speech – I want to ask you a question. Sure. To determine whether the speech does, in fact, violate First Amendment rights. So you get – that's the first issue before you get to the challenge. I have one last question along this line. Sure. Did the State Appellate Department of the Superior Court here do its own independent assessment? No. Because it accepted as the – as the threshold matter that morphing is unlawful, that context can be considered. So while it did consider and describe the images, and we quote at length the description from the Appellate Division, it never conducted an independent assessment under the governing First Amendment standards. So there has to be a do-over at a threshold level to permit that to happen by the State courts. But let me ask – let me ask you now the question I would – I think it follows up on the one you were just asked. Yes. If I took a naked photo of my child, and somebody obtained it and put it on a pornographic website, and then somebody downloaded it, as apparently happened in your client's case, are you saying that that – because when I took it, it was an under the First Amendment case law, and several courts, many courts, have said that most specifically in a case that the State has argued, the Brown case, they made quite clear that what you do with a photo is your own business. Otherwise – and this is what the Supreme Court was getting at.  when it talked about the preferences and predilections of pedophiles. It either is or is not child pornography at the time of creation. You can consider the circumstances under which any image is originally created to determine whether the act of creation subjects a child to child abuse, because that is the justification for carving out from the First Amendment an exception for child pornography. These are not obscene. These don't satisfy the Miller test of obscenity. They are actionable only because of the time of creation they involve the sexual abuse of a child. Now, it may be at some point down the line the law changes, but at this point is set forth in Ashcroft, which rejected three or two separate attempts by Congress to expand the definition of child pornography. The fact that it may – the fact that you could take a photograph from Seventeen magazine or National Geographic or someone else's family photos of a child in a bathtub, and because you happen to be sexually excited by photos of minors, doesn't – what's in your mind doesn't matter for purposes of child pornography. Okay. Let me ask you about the morphing issue. Okay. Because you've been talking up to now about the un-morphed photos, I think. That's right. With respect to morphing, didn't the Supreme Court say in Free Speech Coalition that it was leaving open whether morphed images could be child pornography? And if so, how can we find that the California courts engaged in an objectively unreasonable interpretation of law? Right. The Supreme Court did not address subsection C of the CPPA, the Child Pornography Prevention Act, because that challenge was not presented and the court, therefore, didn't have the authority to decide it. So the question here – and I agree that the Supreme Court has not explicitly stated whether a morphed photo is actionable or not. We concede that. But here's the point. This is the First Amendment. The governing rule, the clearly established Federal rule, is that speech protected by the First Amendment cannot be subject to criminal action unless and until the Supreme Court carves out a new exception. Morphing does not fall – a morphed image does not fall within the existing definition. If you look at Ashcroft v. Free Speech Coalition, the court states this framing very clearly at pages 240 to 241. Recall the CPPA involved three different new causes of action that weren't covered by the prior Federal child pornography legislation. One was the creation of virtual pornography, subsection D. Two was the morphed image, that's subsection C, that the court didn't deal with. And D was the benign image that was presented as if it were a minor engaged in child pornography. That's the one I've been referring to in the context, context, that's subsection D. Now, in leading off its discussion, what the Supreme Court said is the principal question to be resolved, and this is before it mentioned that C wasn't even in the case, is whether the CPPA is constitutional where it prescribes a significant universe of speech that is neither obscene under Miller nor child pornography under Ferber. And then it said Congress defined child pornography as the type of depictions at issue in Ferber, images made using actual minors, and the CPPA retains that prohibition and adds three more. So we start with the fact that Ashcroft, the Supreme Court in Ashcroft v. Free Speech Coalition, recognized that until then it had never held that there should be carved out a new exception for child pornography. Now let me bring in three other Supreme Court cases. Let's look at the recent Supreme Court case law. Look at Stevens, which is the animal cruelty crush video case. Let's assume that someone had been prosecuted by a State for distributing a crush video, as described in the Supreme Court, of the horrible act of a woman in high heels stamping on an animal and killing it, and someone prosecuted them for that before the Stevens case was decided. Or let's take Brown v. Entertainment. That's the case involving California law, violent videos distributed to minors. Another bad set of acts, but one that theretofore had not been prohibited by the First Amendment. Or let's look at Ashcroft itself, virtual pornography. Let's assume that a State had prosecuted someone for engaging in any of those disturbing acts, and the defense was, you can't do that. There has been no carve-out from First Amendment protection for animal cruelty videos, or for violent videos to minors, or for virtual pornography, or for morphed images. You would have, in that instance, if the defendant was convicted and raised a the clearly established Federal principle is that the First Amendment protects all speech that hasn't been carved out of the First Amendment, unless and until there's a ruling that says morphed images are unconstitutional. It is not unconstitutional. And further, if you look at the rationale, the justification, this is what Ashcroft  This is what the Supreme Court did in Ashcroft. It looked to see what was the justification for carving out this special category of speech from the First Amendment. It was the sexual abuse of minors at the time, the live rendition or reproduction of a minor engaged in sexual conduct. So while there may be new applications of the child pornography rule that tie into that justification, when you have a morphed image, morphed image is simply you take it, you could cut out a photograph from a teen celebrity magazine, you can paste it onto an adult body from Hustler magazine. That does not involve the sexual abuse of a child at the time the image is created. Therefore, it is not justified by the only thing the Supreme Court has thus far said could justify a child pornography conviction. Therefore, it is contrary to the clearly established Federal law set forth in these cases. Now, there may be instances of the Supreme Court hasn't said that it must be based on sexual abuse of a child, has it? In other words, if you hire a child to stand someplace and be naked and take a picture of the child when no sexual activities are occurring, that could be child pornography, can't it? To answer the first part of the question, yes, the Supreme Court has specifically said non-obscene images of children are protected unless, quote, they are the product, the pictures are the product of sexual abuse, end quote. That's Ashcroft at page 250 to 51. And I believe that Ashcroft was in turn quoting Ferber. So, yes, indeed the Supreme Court has said just that. Now, as to the second part of your question, can it constitute sexual abuse to take a photograph of a child not engaged in a specifically sexual act? I believe that was the second part. Yes. And the answer to that is? Like a naked child on a seesaw, for example. No. No. And that's where the Court's independent judgment has to come in, because if all you have is photographs of someone at a nudist camp or the photograph of a child or grandchild sitting on the edge of the bathtub, that cannot be the product of sexual abuse. Now, if you take a child not involved in a sexual act with another individual, but acting, presenting themselves, the Dost factors list seven or eight different factors that make clear that at the time of creation, the whole point of creating this for whoever possessed it, whoever made it, for the whole world, that that photo was created in a way specifically to arouse the sexual desires of anybody, pedophile, non-pedophile, collector, magazine reader, whomever. That's different. And that falls within the definition. But there must be something that happens, because the harm – this is protecting against harm to a child. And if you're taking the teen magazine photo, when that photo was taken of the celebrity, she or he wasn't harmed in the taking of the photo. And if you're privately possessing the photo, this is not a distribution case. This is not a posting case. The evidence – and this gets back to the substantial evidence, and I see my times out – but if it goes even on a restricted website like this, that's not what he was charged with. Had they charged him with creating websites, there would be other issues as to privacy and as to reputation. But they're not in this case, because this was just an office computer where he didn't even have access to the restricted password-protected login. But because they were found on a computer that was in his office, the jury found beyond a reasonable doubt that he knowingly possessed those photos. We disagree with that. We don't think the evidence is sufficient. But those other rationales aren't in this case at all. All right. Thank you. Thank you. From the government. Morning, Judge Ferguson. I may have pleased the Court. I'm John Eastman, representing appellees. With me at council table is Sidney Michel from the city of Redondo Beach. I think this is an easy case. ADIPA requires that there be clearly established Supreme Court precedent. The Supreme Court in Ashcroft on the morphing issue expressly says we're not reaching that issue. And the notion that some stray language in other parts of the opinion citing Ferber dispositively settles that issue. When Ferber was decided in 1982, long before we even had the technology for morphing, is, I think, a real stretch. Mr. Eastman, how do you respond to the First Amendment AEDP issue? You know, I think the Supreme Court in Lockyer v. Andrade says that the process that this Court engaged in in McCoy, saying, under the First Amendment cases, we have to look independently at those things even before we get to ADIPA, even though we have to apply the ADIPA standards. I think Andrade says that was an incorrect methodology. Now, granted, Andrade does not deal with First Amendment issues. Right. And I suppose we could distinguish between the two and say the McCoy rule still applies. McCoy relied on Bose, which was a direct appeal case, not a habeas case, and certainly not a habeas case under ADIPA. So I do think that you would be justified in not conducting that independent review, given Lockyer v. Andrade. I don't think it matters here. If you conduct the independent review, as the trial court did, and I would encourage you to look at the thorough recommendations of the magistrate here who did conduct the independent review. And by the way, the appellate division of the California court did conduct an independent review as well. It wasn't entirely clear to me that they did. Well, not necessarily on all of the photos. There's a reference on one of the – I just wrote it down and I missed it – excerpts of records, page 67, where he specifically says, reviewing, and he lists several of the exhibits, we find that the jury's factual determination here was not unreasonable. I think it's fair to assume, given that the – You mean that was with the magistrate judge? That was with the – no, that was the appellate court said, reviewing these, we find that the magistrate – or, sorry, not the magistrate. The judge. The judge was correct. All right. The trial judge. Yeah. Okay. So that's on the morphing issue. And, you know, let me go to the context issue, because I think the morphing is pretty clear. And even if it's not teased out from Ashcroft itself, expressly, even that issue open. You look at – Before you leave morphing, before you leave morphing, I take it there's no doubt that the morphed photos – or the morphed pictures are sexual? There's no doubt that the allegedly morphed pictures are – and I want to clarify something in the factual record. There's a factual dispute. The only two issues that I think appellant is claiming were morphed were exhibit 8 and exhibit 14. And the testimony from both sides on exhibit 8 suggests those may have been morphed. But the testimony on exhibit 14, which is the most sexually explicit of all of the photos, the testimony from the defense expert, Dennis Dunbar, said nothing to indicate that this was a composite. He did not see any visual clues here to tell me that this thing was a fake. So I think even on exhibit 14, whether it's morphed or not is a disputed factual issue. Less so on exhibit 8. But even with respect to those, the notion that – why this is not clearly established by the Supreme Court. You've got Ferber on the one side that says kiddie porn is outside the protection. You've got Ashcroft on the other end of the spectrum that says pure virtual porn that doesn't use real kids at all is protected. And in the middle is morphed, which does use a real kid, but not necessarily in the sexual conduct itself. So then you look back at Ferber, and there's language in Ferber that says it's not just the production, but it's the distribution of these things that cause a reputational harm to the child. And several of the courts that have looked at that have recognized that it's because of that additional harm to the children that this can be outside of First Amendment protection as well. The Supreme Court has not settled that issue. It's an open question for a very good reason, and I think that's dispositive under the Adipa stand. At least it's those two photographs. On those two photographs, yeah. And one of those photographs was up on the website, so we'll also be involved in the context issue. But the other photo, 14, as well as 13, which doesn't have any issue about morphing, was not up on the website and therefore not any part of the context issue. And so the conviction on that one has to be upheld anyway, because it doesn't suffer from any of the supposed infirmities of the convictions on the other. And that's the only possession charge for which there was a 90-day jail sentence actually issued. The duplication charge was set to run concurrent with it, and there was no jail time given to any of the other convictions. So just on that one alone, the conviction can be upheld. That one, you say that one alone, what number is that? Number 13. Number 13. Thirteen. Yes. Now, on the context issue, you know, the, again, this, under the Adipa standard, it seems to me clear that Ashcroft does not settle this issue either. What was at issue in Ashcroft is subsection D, as counsel pointed out. And that dealt with the way sexually explicit images were advertised, promoted, presented, or what have you. What was at issue there is whether you could take something that did not involve children and advertise it as if it did, and the mere language of the advertisement could be prosecuted. And the Court said, no, you can't do that. Here's the direct language from the opinion itself. Even if the film contains no sexually explicit scenes involving minors, it could be treated as child pornography if the title and trailer conveyed the impression that the scenes would be found in the movie. The determination turns on how the speech is presented, not in what is depicted. That's a far cry from saying pictures of nude children that might themselves meet some of the dose factors, as I think the magistrate judge below himself independently found, put in the context of an adult pornographic and, quite frankly, obscene website. Counsel points out, claims that these weren't obscene. The jury finding on that was hung. And, you know, I would, if you're up to it, look at the exhibits, the special exhibits tied to count 18 in the case, which is where the obscenity charge was. The jury never found that they weren't obscene. They hung on that, and then the count was subsequently dismissed. But they're vile. And to say that putting these nude pictures of children in circumstances where you would not normally find nude children with a focus on the genitals and on the pubic area and on the breast, and putting it in the context of that adult website, to say that that's not, you know, something that the jury can consider, has not been clearly established by Supreme Court law. And, in fact, if you look at the lower courts that have addressed this, they actually say exactly the opposite. That kind of context can be considered. And I think one of the cases cited by counsel in their brief, I think, demonstrates this most clearly. It's a Northern District of Texas case. And, you know, we don't address it in our brief, because the issue under ADIPA is, you know, what the Supreme Court has said. And Ashcroft doesn't settle this issue. But the Falunek v. Hustler case, Northern District of Texas, it was not dealing with porn. It was dealing with false light claims. But they're the ones citing it for the context issue. And here it relies on a Fifth Circuit case. And it says, Brown, the Fifth Circuit case, states that the entire Chic magazine that's one of the Hustler family of magazines, should be introduced into evidence so that the jury, in effect, could place the position, be placed in the position of an ordinary reader. The Brown panel rejected the rather absurd contention that we should cut out Ms. Braun's picture and look solely at it to determine whether she had been placed in a false light, because common sense dictates that the context and manner in which a picture appears determines to a large extent the effect which it will have on an ordinary reader. And that's what the lower courts are doing with the context issue. That one dealt with false light, but they've done it in a child pornography context as well. Do you recall, Mr. Eastman, at the time of the trial when the jury instructions were proposed, did counsel actually object to the four-part test that was given by the trial judge? The trial judge, where his language comes in saying that you can consider innocuous pictures on how they're used, that was in response to a motion to dismiss, right? The jury instruction is just a straight repetition of the dose factors. Right. And there's no objection to that. There is a request to include a specific instruction on context that was not given. But I don't recall that there was any objection specifically to the language of the dose factors test that was used. And then, of course, the prosecutor relying on the language of setting in that dose factor case, and the trial court's earlier ruling, you know, did rely on it in his context. The magistrate judge, I think, looked individually at the pictures apart from that context and found that it was also not objectively unreasonable for a jury to have found that those were child pornography, even if you take the context away. And, you know, so under ADIPA, I think that's more than sufficient. But like I said, I don't think the context issue has been foreclosed by the Supreme Court in the way that counsel is arguing. And the lower cases, the lower court cases we cite in our brief that go different ways, that expressly recognize that the court hasn't decided this, that it's confusing, that whether you can consider things outside the four corners of the picture remains an open question. If it's an open question for the lower courts, then it's clearly an open question for the Supreme Court. And under ADIPA, that's dispositive. Well, if there's no other questions, I think I can. Thank you. Thank you. Your Honor, I think I have three points. First is you have to address these counts one by one because the trial judge sentenced and imposed fines separately on each separate count. That's Excerpts of Records 317 to 20. Secondly, counsel is correct that the Supreme Court in Ferber said that where you have a case where someone is charged with distribution, public distribution, there may be a valid justification based on privacy issues or reputation issues. It wasn't carved out from the First Amendment in that case, and it doesn't apply in this case because the prosecutor did not charge Mr. Shoemaker, and Mr. Shoemaker was not charged with anything that might involve the privacy interests or reputational interests of any minor. He was charged and convicted solely of possessing on one office computer these images along with 3,700 other images that were seized but other than the 23 were never charged for anything. Finally, yes, it's true that in a false light case, it's important to look to the context as a whole. It's also true in an obscenity case under Miller that you have to look to the work as a whole. But what the Supreme Court repeatedly said when it carved out child pornography as an exception to the First Amendment in the first instance after recognizing that it is a category that is not obscene under Miller, that it has to look separately at the particular image, not in the context of a work as a whole, but just that one image from a movie, just that one photograph to determine whether a particular rationale for carving out a new exception of the First Amendment applies there. It concluded in the first child pornography cases that, yes, an exception should be carved out not based on context, not to say that a photo that I have or you have or someone else has may be actionable depending on what is in that person's state of mind, what turns that person on or off, but based on the circumstances of the creation of the image in the first instance. Because that speech, the act of creating that expressive image is speech. That speech is either protected at the outset or not. While it may be, as the Supreme Court said in Ferber, that something could then be done with that that affects other interests that may or may not implicate First Amendment values and therefore be actionable, as the animal cruelty was held not to be, as the violent video games was held not to be, as the virtual porn and as the presentation was held not to be. But the fact that the possibility exists that some other category of speech could be held not protected by the First Amendment does not affect the governing, clearly established federal principles that until an exemption has been created. And we know in California more images are not unlawful. The California Supreme Court in the decision that the Cal Supreme Court denied review in has squarely held both as a matter of statutory construction and as a matter of construing Ashcroft and Ferber. California no longer permits the prosecution of anyone for holding Exhibits 8 and 14. If there's a dispute as to whether Exhibit 14 is morphed, then there could be a retrial at which the State has to prove that this is, in fact, the sort of image that is outside the scope of the First Amendment. Exhibit 8 clearly is morphed. We believe if you look at 14, it's clearly morphed. But if it is morphed, he can't be prosecuted. Mr. Shoemaker has to register as a sex offender for the rest of his life possessing privately these images, two of which aren't even a crime in California now. Thank you, Your Honor. Thank you. This matter is submitted.
judges: Pregerson, Paez, Hurwitz